**Roger K. WILLIAMS, Plaintiff,**

v.

**LOCAL UNION 911, UNITED STEEL-WORKERS OF AMERICA, Alias; and Charles E. McLaughlin, in his capacity as Administrator of Local 911 United Steelworkers of America, Alias, Defendants.**

**Civil Action No. 98–295L.**

United States District Court, D. Rhode Island.

Dec. 8, 1998.

Aram Robert Schefrin, Lovett, Schefrin, Gallogly & Harnett, Providence, RI, for Plaintiff.

Richard M. Peirce, Roberts, Carroll, Feldstein & Peirce, Providence, RI, for Defendants.

*MEMORANDUM AND ORDER*

LAGUEUX, Chief Judge.

Roger K. Williams ("plaintiff") alleges violations of R.I.Gen.Laws. § 28–14–4 [1] by the defendants Local Union 911 ("Local"), United Steelworkers of America ("Steelworkers"), and Charles E. McLaughlin in his capacity as the Administrator of Local Union 911. He

---

1.  (a) Whenever an employer separates an employee from the payroll, the unpaid wages or compensation of the employee shall become due on the next regular payday and payable at the usual place of payment.

(b) Whenever an employee is separated from the payroll of an employer after completing at least one year of service, any vacation pay accrued by collective bargaining, company policy, or other agreement between employer and employee shall become wages and payable in full or on a prorated basis with all other due wages on the next regular payday for the employee.

filed his case in Providence County Superior Court. Local, Steelworkers and McLaughlin answered plaintiff's complaint and filed a counterclaim against him for not returning money that Local inadvertently gave to him in the form of additional salary and benefits.

Defendants removed the case to this Court. Defendants argued that the Labor Management Relations Act of 1947, § 301, 29 U.S.C. § 185 ("LMRA") preempted plaintiff's state-law claim. He responded by moving to remand the case to state Superior Court pursuant to 28 U.S.C. § 1447. In an August 18, 1998 decision, Magistrate Judge Robert W. Lovegreen ruled that the case should be remanded.

This case is before this Court on defendant's objection to Judge Lovegreen's decision. Defendant advances two arguments. First, that Judge Lovegreen mischaracterized the law under *Wooddell v. IBEW*, 502 U.S. 93, 112 S.Ct. 494, 116 L.Ed.2d 419 (1991), in finding that a suit involving local union bylaws is not preempted by the LMRA. Second, that Judge Lovegreen mischaracterized the facts by not addressing whether the outcome of this dispute depends on the collective bargaining agreement.

This Court rejects both arguments. Therefore, the Magistrate Judge's decision is affirmed and the case hereby is remanded to state court.

## I. *Facts*

Local is an unincorporated local labor union. At all relevant times, Local represented employees of Davol, Inc. under a collective bargaining agreement that it had negotiated with Davol. Plaintiff alleges that he was elected president of Local pursuant to Local's by-laws in May 1970. He also alleges that on January 21, 1972, an amendment to Article IV, § 1(A)(1) of Local's by-laws transformed the Local president's position from a part-time position to a full-time position. At that time, Local was affiliated with the United Rubber, Cork, Linoleum and Plastic Workers of America, AFL—CIO—CLC. On July 1, 1995, Steelworkers subsumed Local. Plaintiff, however, continued to serve as Local's president.

Plaintiff alleges that Article IV, § 4(B)(1) of Local's bylaws states that the Executive Board of Local is charged with determining the salary of Local's president. Plaintiff also alleges that Article IV, § 4(B)(1) states that the salary of the Local's president must be based upon the wages that Local had negotiated with Davol and had documented in the collective bargaining agreement. Plaintiff asserts that on April 25, 1994, the Executive Board of Local determined that the weekly salary of Local's president would be $716.20. He also asserts that the weekly salary of Local's president remained at $716.20 during all times relevant to this suit.

On June 9, 1997, Steelworkers placed Local under administratorship and appointed McLaughlin the Administrator of Local. Plaintiff alleges that these actions were completed pursuant to provisions in Steelworkers' Constitution. He claims that Steelworkers placed Local under administratorship due to the closure of Davol's facility in Cranston, Rhode Island. Local paid plaintiff his salary as Local president through July 19, 1997. He asserts that, either by the Administrator's appointment or pursuant to Local's by-laws, he continued to serve as Local's president until August 12, 1997. He claims, however, that Local did not pay him for performing the duties of president after July 19, 1997.

Plaintiff claims that the collective bargaining agreement and Local's by-laws required him to return to his former position as a Davol employee. He asserts, however, that due to requirements set by Davol, he was not permitted to resume his employment with Davol until August 18, 1997, which resulted in a loss to him of $613.88.

On April 22, 1998, plaintiff filed suit against Local, Steelworkers and McLaughlin (the "Defendants") for violation of R.I.Gen. Laws § 28–14–4. Plaintiff seeks a total of $7,366.62 in damages. Specifically, he seeks $2,455.54 for the time period after July 19, 1997 until August 12, 1997, during which Local failed to pay him for the services that he allegedly rendered as Local's president. He also seeks $4,297.20 for accrued vacation pay. In addition, plaintiff seeks $613.88 for the time period between August 12, 1997 and

August 18, 1997, during which plaintiff allegedly was obligated to return to his employment with Davol but could not because of requirements set by Davol.

## II. Standard of Review and Preemption Doctrine

■ Judge Lovegreen styled his decision as a "Report and Recommendation," but a motion to remand is non-dispositive and is better-characterized as a final order. *See Delta Dental of Rhode Island v. Blue Cross & Blue Shield of Rhode Island*, 942 F.Supp. 740, 746 (D.R.I.1996). Thus, this case is an appeal of a final order, rather than an objection to a report and recommendation. The appropriate standard of review is whether this Court finds the magistrate judge's findings to be "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); Fed. R.Civ.P. 72(a); D.R.I.R. 32(b).

Under the federal removal statute, a defendant may remove any civil action filed in state court if a federal district court can find it has original jurisdiction over the action. *See* 28 U.S.C. § 1441(a). If at any time before final judgment it appears that removal was improper due to a lack of original jurisdiction in the district court, the case must be remanded to the state tribunal from which it was removed. *See* 28 U.S.C. § 1447(c). The propriety of removal in this case hinges upon whether this court has federal question jurisdiction over plaintiff's state-law claim.

"The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule.'" *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 391–92, 107 S.Ct. 2425, 2429, 96 L.Ed.2d 318 (1987). The well-pleaded complaint rule states that federal question jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint. *See id.* The "complete preemption" doctrine serves as an independent corollary to the well-pleaded complaint rule. *See Franchise Tax Bd. v. Construction Laborers Vacation Trust for Southern California*, 463 U.S. 1, 22–24, 103 S.Ct. 2841, 2853–54, 77 L.Ed.2d 420 (1983). The complete preemption doctrine posits that "Congress may so completely preempt a particular area [of law] that any

civil complaint raising this selective group of claims is necessarily federal in character." *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63–64, 107 S.Ct. 1542, 1546, 95 L.Ed.2d 55 (1987). Courts may look beneath the face of the complaint to determine if the plaintiff is attempting "to defeat removal by asserting a federal claim under state-law colors." *BIW Deceived v. Local S6*, 132 F.3d 824, 831 (1st Cir.1997).

The preemptive force of the LMRA is powerful enough to displace any state-law cause of action for violation of contracts between an employer and a labor organization. *See Franchise Tax Bd.*, 463 U.S. at 23, 103 S.Ct. at 2853. The issue in this case is whether the LMRA preempts plaintiff's claim.

## III. Preemption of a Claim Under Local's Bylaws

■ Defendants argue that the LMRA preempts any claim that alleges a violation of a local bylaw, but Judge Lovegreen all but mimicked the Supreme Court when he rejected the argument.

The *Wooddell* case cited by defendants does not support their contention. The Supreme Court held that:

> a suit properly brought under § 301 must be a suit either for violation of a contract between an employer and a labor organization representing employees in an industry affecting commerce or for violation of a contract between such labor organizations.

*Wooddell*, 502 U.S. at 98, 112 S.Ct. at 498. In *Wooddell*, both parties characterized the issue as a claim under the union constitution. *See id.* at 98–99 n. 3, 112 S.Ct. at 498 n. 3. A union constitution is a contract between labor organizations.

Local bylaws are not contracts between labor organizations. Nor are they contracts between a union and an employer. Although the First Circuit recently emphasized that § 301 completely preempts claims within its purview, it did nothing to extend that power to contracts that do not involve an employer-union or union-union. *See BIW Deceived*, 132 F.3d at 831–32. Therefore, Judge Lovegreen was clearly correct that the LMRA

creates no jurisdiction in this Court over a dispute alleging a violation of Local's bylaws.

## IV. *Dependence Upon a Collective Bargaining Agreement*

■ Second, defendants argue that plaintiff's claim is preempted because it depends on the collective bargaining agreement. Judge Lovegreen held otherwise, and his analysis was flawless. This Court fleshes out the legal analysis merely to emphasize that Judge Lovegreen's decision was correct and, therefore, not clearly erroneous.

■ The LMRA preempts a state-law claim where the claim depends upon the meaning of a collective bargaining agreement ("CBA"). *See Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 405–06, 108 S.Ct. 1877, 1881, 100 L.Ed.2d 410 (1988); *BIW Deceived*, 132 F.3d at 829. That can occur in either of two distinct ways: on the one hand, a claim can allege the violation of a duty that arises from the CBA itself, or, on the other hand, a claim can require a court to interpret a specific provision of the CBA. *See BIW Deceived*, 132 F.3d at 829; *Flibotte v. Pennsylvania Truck Lines*, 131 F.3d 21, 26 (1st Cir.1997).

This could only be a case of the "other" hand. Defendants argue that a state-court judge would have to interpret the CBA to decide how much money plaintiff might be owed.

■ The Supreme Court is clear that § 301 does not preempt a state-law claim where the state judge only refers to the CBA's wage rates in order to set a statutory penalty. *See Livadas v. Bradshaw*, 512 U.S. 107, 125, 114 S.Ct. 2068, 2079, 129 L.Ed.2d 93 (1994) (no preemption where California law set penalty according to salary set by a CBA). When the meaning of contract terms is not the subject of dispute, the mere fact that a CBA will be consulted in the course of state-law litigation does not require the claim to be extinguished. *See id.* 512 U.S. at 124, 114 S.Ct. at 2078. Therefore, § 301 does not preempt a state-law action where the state judge refers to the CBA wage rates in order to set damages.

In their argument, defendants miscast plaintiff's claim. They argue that "plaintiff is asserting that he was owed a duty by the defendants, to be paid money, pursuant to the [CBA] and the bylaws." (Def.'s Objection to and Appeal of Report and Recommendation of Magistrate Judge Regarding Pl.'s Mot. to Remand at 7.) Under *Livadas*, this is legally incorrect. If defendants had a duty to pay plaintiff, they acquired that duty under Local's bylaws. That is the contract between defendants and plaintiff. Defendants owe no duty to plaintiff under the CBA. The CBA is necessary to the litigation at most to set the amount of damages if the state judge finds that defendants breached their contract.

In this case, the state judge may not even need to consult the CBA. Judge Lovegreen noted that defendants, in their Answer, did not deny that the Executive Board of Local set the Local president's weekly salary at $716.20. Instead, defendants represented that they were without sufficient knowledge or information to admit or deny plaintiff's allegations as to the salary amount. Consequently, the amount of the Local president's salary is not really in dispute. This case raises only the question of whether plaintiff was entitled to a salary after July 19, 1997.

## CONCLUSION

For the preceding reasons, this Court affirms Magistrate Judge Lovegreen's decision. Because plaintiff's claims are not preempted, removal was inappropriate. Plaintiff's motion to remand hereby is granted.

It is so Ordered.